LAW OFFICES
## WILLIAMS & CONNOLLY LLP

LISA S. BLATT
(202) 434-5050
lblatt@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
202.434.5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

June 11, 2025

**VIA ELECTRONIC FILING**

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *Cantero v. Bank of America, N.A.*, Case No. 21-400; *Hymes v. Bank of America, N.A.*, Case No. 21-403

Dear Ms. Wolfe:

Under Federal Rule of Appellate Procedure 28(j), Bank of America, N.A., writes to inform this Court of a letter issued by the Office of the Comptroller of the Currency (OCC) (enclosed) after Bank of America filed its supplemental brief.

On May 8, 2025, the Conference of State Bank Supervisors sent OCC a letter (also enclosed) asking OCC to rescind its preemption regulations. On June 9, 2025, OCC declined the invitation and reiterated its longstanding view that "OCC's preemption regulations are wholly consistent with Dodd-Frank" and with *Cantero v. Bank of America, N.A.*, 602 U.S. 205 (2024).

OCC's view is consistent with the approach taken in Bank of America's supplemental brief. *See, e.g.*, BOA Br. 18-19 (discussing OCC preemption regulations).

Respectfully submitted,

/s/ Lisa S. Blatt

Lisa S. Blatt

cc: counsel of record (via ECF)



Office of the
Comptroller of the Currency

Washington, DC 20219

June 9, 2025

Brandon Milhorn
President and CEO
Conference of State Bank Supervisors
1300 I Street NW, Suite 700 East
Washington, DC 20005

Subject: Preemption

Dear Mr. Milhorn:

This is in response to your letter dated May 8, 2025, requesting the OCC rescind its preemption regulations in light of Executive Orders (EO) 14219—*Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative* and 14267—*Reducing Anti-Competitive Regulatory Barriers.*

The OCC's regulations are consistent with federal law, Supreme Court precedent, and the EOs. The OCC will not rescind its regulations and will continue to vigorously support and defend federal preemption.

## I. The OCC's Preemption Regulations Are Lawful

Your letter claims that the OCC's preemption regulations are unlawful because they are not consistent with the best reading of the Dodd–Frank Wall Street Reform and Consumer Protection Act (Dodd–Frank).[1]

Contrary to your assertions, the OCC's preemption regulations are wholly consistent with Dodd–Frank and Supreme Court precedent and thus meet the requirements of EO 14219. For your awareness, the OCC reviewed its preemption regulations following Dodd–Frank's enactment. The OCC considered the relevant statutory language, legislative history, and judicial precedent and concluded that Dodd–Frank codified the conflict preemption standard in *Barnett Bank of Marion County, N.A. v. Nelson*, including the antecedent cases it cited. This conclusion is consistent with the Supreme Court's subsequent decision in *Cantero v. Bank of America, N.A.*, which rejects arguments that Dodd–Frank created a new preemption standard and instead notes that "Dodd–Frank adopted *Barnett*" and that *Barnett* "was also the governing preemption

---

[1] 12 U.S.C. § 25b(b)(1)(B). For additional information regarding Dodd–Frank's procedural requirements, refer to OCC Interpretive Letter 1173 (Dec. 18, 2020) (Chief Counsel's Interpretation issued by Senior Deputy Comptroller and Chief Counsel Jonathan V. Gould).

standard before Dodd–Frank."[2] The OCC applied this same standard when it identified certain preempted and non-preempted state laws in its regulations in 2004 and again when it reviewed the regulations in 2011.[3] The OCC's regulations are consistent with applicable law.

## II. The OCC's Regulations Support Efficient and Effective Operations

You also suggest that the OCC's preemption regulations are anti-competitive. This not the case. In addition, the OCC's regulations are consistent with EO 14267. Federal preemption is a cornerstone of the dual banking system, under which federally and state-chartered banks operate alongside one another. As the Supreme Court recognized in *Cantero*, this system allows federally and state-chartered banks to "co-exist and compete."[4]

Federal preemption has proven to be a powerful enabler of local and national prosperity and growth. As the Supreme Court noted at the beginning of the twentieth century, federal legislation and regulation "has in view the erection of a system extending throughout the country, and independent, so far as powers conferred are concerned, of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the [s]tates."[5] Federally chartered banks, many of which operate across state lines, therefore may rely on preemption to remove barriers and achieve efficiencies associated with a uniform set of rules. Thus, federal preemption has helped to foster the development of national products and services and multi-state markets, which have benefitted individuals and businesses in every state and powered this Nation's economy.

## III. Conclusion

Thank you for sharing your views on this important matter. The OCC has thoroughly considered the points you raised and, as set forth above, reaffirms that its preemption regulations are valid under applicable law and are critical to ensuring the continued strength of our Nation's banking system.

Sincerely,

/signed/

Rodney E. Hood
Acting Comptroller of the Currency

---

[2] 602 U.S. 205, 214 n.2 (2024).
[3] 69 Fed. Reg. 1904 (Jan. 13, 2004); 76 Fed. Reg. 43549, at 43557 (July 21, 2011) (discussing the Agency's efforts "to confirm that the specific types of laws cited in the rules are consistent with the standard for conflict preemption in the Supreme Court's *Barnett* decision" and addressing the Agency's assessment of the effects of state law on, for example, lending and deposit-taking by OCC-regulated banks). *See also* 12 C.F.R. §§ 7.4007, 7.4008, 34.4.
[4] 602 U.S. at 210.
[5] *Easton v. Iowa*, 188 U.S. 220, 229 (1903).



# Rescission of OCC Preemption Regulations

Blog View recent blog entries
Submitted by dscott@csbs.org on Thu, 05/08/2025 - 10:28

The Honorable Rodney Hood

Acting Comptroller of the Currency

Office of the Comptroller of the Currency

400 7th Street SW

Washington, DC 20219

Re: *Executive Orders 14219 and 14267 – Rescission of OCC Preemption Regulations*

Dear Acting Comptroller Hood:

On behalf of the Conference of State Bank Supervisors [1] ("CSBS"), I request that the Office of the Comptroller of the Currency ("OCC") promptly rescind its rules governing National Bank Act preemption ("preemption regulations") in order to comply with Executive Orders ("EO") 14219 [2] and 14267 [3] issued by President Trump regarding unlawful regulations and anti-competitive regulatory barriers.

Upon rescinding the current preemption regulations, CSBS requests that the OCC swiftly propose rules to implement the National Bank Act's preemption standard and process [4] in a manner consistent with the unambiguous directives provided by Congress and affirmed by the U.S. Supreme Court.

**I. OCC Preemption Regulations and EO 14219**

On Feb. 19, 2025, President Trump signed EO 14219, which directs federal agency heads to, among other things, rescind unlawful regulations. Section 2(a)(iii) of EO 14219 specifically identifies "regulations that are based on anything other than the best reading of the underlying statutory authority" as those that should be prioritized for rescission. [5] The OCC's preemption regulations must be rescinded to comply with Section 2(a)(iii) since they ignore both the plain language of, and Congressional intent embodied in, Section 5136C of the National Bank Act ("Section 5136C"). [6] The OCC's preemption regulations are clearly unlawful, inconsistent with Supreme Court rulings, [7] and contrary to the public interest. [8]

    a.  OCC Preemption Regulations Ignore the Text and Intent of the National Bank Act

In the wake of the financial crisis, Congress sought to curtail the OCC's longstanding pattern and practice of broadly preempting state consumer financial laws for national banks. In particular, wholesale preemption of state mortgage laws had been a key contributor to the mortgage crisis that morphed into a global financial crisis. To address the risks that OCC preemption posed to consumers and financial stability, Congress enacted Section 5136C to explicitly "undo [the] broader standards adopted by rules, orders, and interpretations issued by the OCC in 2004" [9] by "revis[ing] the standard the OCC will use to preempt State consumer protection laws." [10]

To limit the OCC's preemption powers, Congress established an unambiguous standard as to when the OCC may preempt a state consumer financial law. Specifically, a state consumer financial law is preempted *only if*:

> …in accordance with the legal standard for preemption in the decision of the Supreme Court of the United States in *Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996), the State consumer financial law **prevents or significantly interferes** with the exercise by the national bank of its powers[.] [11]

In addition to directing the OCC to use the *Barnett Bank* "prevents or significantly interferes" standard, Congress established a clear process that the OCC must follow to preempt a state consumer financial law. The OCC must make preemption determinations according to the *Barnett Bank* standard on a *case-by-case basis.* [12]

Notwithstanding the National Bank Act and clear Congressional intent, the OCC subsequently finalized preemption regulations in 2011 that wholly ignored the clear directive in Section 5136C. [13] Instead of creating a process where preemption is considered on a case-by-case basis [14] subject to a substantial evidence requirement that must be made on the record, [15] the OCC simply repromulgated its already broad preemptive regulations from 2004. The OCC's 2011 preemption rule preserved the status quo that Congress went to great lengths to reverse only a year before in Section 5136C. By reissuing the 2004 regulations that preempted more than 30 broad categories of state laws, [16] the OCC ignored both the plain language and best reading of the National Bank Act.

      b.   *Proper Preemption Regulations Would Negate Costly, Unnecessary Litigation*

In the absence of regulations that faithfully implement the preemption provisions of the National Bank Act, the Supreme Court nonetheless reaffirmed Section 5136C's preemption standard and process in *Cantero v. Bank of America, N.A.* The Court ruled that preempting a state consumer financial law requires "a practical assessment of the nature and degree of interference caused by a state law" [17] through a "nuanced comparative analysis." [18]

The preemption standard and accompanying process outlined in the National Bank Act are designed to implement the "nuanced comparative analysis" by requiring a case-by-case decision that includes substantial evidence on the record. Unfortunately, courts have had to step in to perform this process because, as noted by Supreme Court Justice Gorsuch, the OCC has not put the statutorily-mandated framework in place. [19] Rescinding the current preemption regulations and crafting a process that complies with

the plain meaning of the law will enable banks and regulators to move forward from an issue that Congress thought it had settled legislatively 15 years ago.

## II. OCC Preemption Regulations and EO 14267

On April 9, 2025, President Trump signed EO 14267, which requires agency heads to eliminate regulations that are anti-competitive, including those that "have the effect of limiting competition between competing entities." [20] The OCC's preemption regulations limit competition by granting national banks and federal thrifts a competitive advantage over similarly situated state-chartered banks and state-licensed nonbank firms.

Indeed, by insulating national banks from broad categories of state consumer financial laws, in contravention of the law and process outlined in Section 5136C, the OCC has sought to thwart competition by *attracting* additional national bank charters at the expense of state bank charters. This is not idle speculation, but a fact acknowledged by former Comptroller John Hawke during Congressional testimony. [21] The OCC provides national banks with a competitive advantage via broad preemption not authorized by the National Bank Act and not available to similarly situated state-chartered banks. Thus, the OCC's preemption regulations also violate the directive in EO 14267 that "[f]ederal regulations should not predetermine economic winners and losers." [22]

## Conclusion

Executive Orders 14219 and 14267 compel the OCC to promptly rescind its preemption regulations codified through its 2011 final rule. These regulations are in clear contravention of the plain language and intent of 12 U.S.C. § 25b. Moreover, the preemption regulations are anti-competitive by inappropriately shielding national banks from state consumer financial laws that apply to similarly situated state-chartered banks and state-licensed nonbank firms.

Sincerely,

Brandon Milhorn

President and CEO

## Endnotes

- 1CSBS is the nationwide organization of state banking and financial regulators from all 50 states, the District of Columbia, and the U.S. territories.
- 2Exec. Order No. 14219, *Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative*, 90 Fed. Reg. 10583 (Feb. 19, 2025).
- 3Exec. Order No. 14267, *Reducing Anti-Competitive Regulatory Barriers*, 90 Fed. Reg. 15629 (Apr. 9, 2025).
- 412 U.S.C. § 25b.
- 5*Supra* note 2, at 10583.
- 6National Bank Act § 5136C, as added and amended July 21, 2010, P. L. 111-203, Title X, Subtitle D, §§ 1044(a), 1045, 1047(a)(codified at 12 U.S.C. § 25b).
- 7These include rulings that: (i) reject *Chevron* deference (which had already been denied to the OCC in Sec. 5136C of the National Bank Act) and require a federal agency to adopt regulations that meet the "single, best meaning" of the statute authorizing it; and (ii) reject the OCC's flawed preemption standard and analysis. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) (overturning *Chevron*); *Cantero v. Bank of America, N.A.,* 144 S. Ct. 1290 (2024) (overturning a *per se* preemption standard advocated by national banks and the OCC by reaffirming the codified standard for National Bank Act preemption of state consumer financial laws).
- 8Presidential Memorandum, *Directing the Repeal of Unlawful Regulations* (Apr. 9, 2025).
- 9111th Cong., 2d Sess., Senate Report 111-176 (Apr. 30, 2010).
- 10H.R. Rep. No. 111-517, at 875 (2010) (Conf. Rep.).
- 1112 U.S.C. § 25b(b)(1)(B) (emphasis added).
- 1212 U.S.C. § 25b(b)(3)(A) (defining "case-by-case" basis as "a determination pursuant to this section made by the Comptroller concerning the impact of a particular State consumer financial law on any national bank that is subject to that

law, or the law of any other State with substantively equivalent terms.")
- [13]OCC, Final Rule, *Office of Thrift Supervision Integration; Dodd-Frank Act Implementation*, 76 Fed. Reg. 43549 (July 21, 2011).
- [14]12 U.S.C. § 25b(b)(3).
- [15]12 U.S.C. § 25b(c).
- [16]OCC, Final Rule, *Bank Activities and Operations; Real Estate Lending and Appraisals*, 69 Fed. Reg. 1904 (Jan. 13, 2004).
- [17]*Cantero*, *supra* note 7, at 1300.
- [18]*Id.* at 1301.
- [19]Remarking on the OCC's intransigence, Justice Gorsuch asked, "is the OCC ever going to get around to doing that which Dodd-Frank directs it to do?" *Id.* (Transcript of Oral Argument at 53, question from Justice Gorsuch to Deputy Solicitor General Steward).
- [20]*Supra* note 3, at 15629.
- [21]*Review of the National Bank Preemption Rules: Hearing Before the S. Comm. on Banking, Housing, and Urban Affairs*, 108th Cong., 2nd Sess. (Apr. 7, 2004) (exchange between Senator Sarbanes and Comptroller Hawke: "Senator SARBANES. The Wall Street Journal has an article in which they say, speaking about you, "Still, [Comptroller Hawke] does not apologize for using the OCC's power to override State and local laws designed to protect consumers. Enjoying this aid provides an incentive banks to sign up with the OCC. He says it is one of the advantages of a national charter, 'and I am not the least bit ashamed to promote it.'" Actually, they put that part of it in quotation marks. Comptroller HAWKE. Yes. There is no question, Senator, that preemption is an important attribute of the national bank charter, and I am a strong believer in the quality of the national bank charter.").
- [22]*Supra* note 3, at 15629.

Featured Policy
Off
Image



Top Category
[Statements & Comments](#)
Policy Category
[Depository](#)
Image



202.296.2840
newsroom@csbs.org

1129 20th Street, N.W., 9th Floor, Washington, DC 20036